O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **PATTY JO SANDERS,** | ) | NO. EDCV 10-787-MAN |
| Plaintiff, | ) ) | |
| v. | ) ) | MEMORANDUM OPINION |
| **MICHAEL J. ASTRUE,** | ) | AND ORDER |
| **Commissioner of Social Security,** | ) ) | |
| Defendant. | ) ) | |

Plaintiff filed a Complaint on June 11, 2010, seeking review of the denial by the Social Security Commissioner (the "Commissioner") of plaintiff's application for supplemental security income ("SSI"). On July 9, 2010, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on February 15, 2011, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and defendant requests that the Commissioner's decision be affirmed or, alternatively, remanded for further administrative proceedings. The Court has taken the parties'

Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for SSI on July 18, 2006. (Administrative Record ("A.R.") 53.) Plaintiff, who was born on November 8, 1967 (A.R. 10),[1] claims to have been disabled since May 15, 2002, due to chronic obstructive pulmonary disease ("COPD"), congestive heart failure, high blood pressure, diabetes, "heart valves collapsing," and back pain (A.R. 53, 62, 68). Plaintiff has no past relevant work experience. (A.R. 60.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 62-66, 68-72), plaintiff requested a hearing (A.R. 73, 77-78). On June 4, 2008, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Lowell Fortune (the "ALJ"). (A.R. 8-47.) At the hearing, testimony was given by medical expert Dr. Samuel Landau, M.D., a Board certified cardiologist and internist (A.R. 11-23, 55), and vocational expert Alan E. Cummings (A.R. 45-46, 53). On August 6, 2008, the ALJ denied plaintiff's claim (A.R. 53-61), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-3). That decision is now at issue in this action.

///
///

---

[1] On the date plaintiff filed her application for SSI, plaintiff was 38 years old, which is defined as a "younger individual." (A.R. 60; 20 C.F.R. § 416.963.)

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff has not engaged in substantial gainful activity since July 18, 2006, the date plaintiff filed her application for SSI.[2] (A.R. 55.) The ALJ determined that plaintiff has the following severe impairments: morbid obesity; diabetes mellitus II; and a right knee disorder.[3] (*Id.*) The ALJ also determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. § Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). (A.R. 56.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform "a range of work between sedentary and light" as defined in 20 C.F.R. § 416.967. (A.R. 57.) Specifically, the ALJ found that:

> [Plaintiff] can lift and/or carry 20 pounds occasionally, 10 pounds frequently; stand and/or walk two hours in an eight-hour workday, and sit about six hours in an eight-hour workday. Her ability to push and/or pull is unlimited, other

---

[2] Although plaintiff has no reported income, plaintiff stated that she washed and dried animals for less than minimum wage between March 20, and August 23, 2003. (A.R. 23-25, 55.) The ALJ found that these earnings did not constitute substantial gainful activity. (A.R. 55.)

[3] Relying on Dr. Landau's testimony, the ALJ also determined that plaintiff's following "medically determinable impairments" are not severe: left knee disorder, asthma/COPD, and hypothyroidism. (A.R. 55.)

3

|   |   |
|---|---|
| 1 | than as shown for lifting and/or carrying. She may |
| 2 | occasionally climb ramps or stairs, bend, or stoop and is |
| 3 | precluded from climbing ladders, ropes, or scaffolds, from |
| 4 | balancing, crouching, kneeling, running, jumping, or working |
| 5 | at heights, and she must avoid walking on uneven terrain. |
| 6 | [Plaintiff] should also avoid continuous exposure to humidity |
| 7 | or wetness, and should not be exposed to fumes, odors, dust, |
| 8 | gases or chemicals. [Plaintiff] should work in a clean, air- |
| 9 | conditioned environment. |

(*Id.*)

The ALJ concluded that, because plaintiff has no past relevant work, "transferability of job skills is not an issue." (A.R. 60.) Based on plaintiff's "age, education, work experience, and [RFC]," and the testimony of Mr. Cummings, the ALJ determined that plaintiff is able to perform work "that exists in significant numbers in the national economy." (A.R. 61.) Accordingly, the ALJ concluded that plaintiff has not been under a disability within the meaning of the Social Security Act since July 18, 2006, the date the application was filed. (A.R. 53, 61.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." <u>Connett v. Barnhart</u>, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y of Health and Hum. Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v.</u>

Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff makes the following claims: (1) the ALJ improperly determined that plaintiff did not meet or equal Listing 1.02A of the Listing of Impairments; and (2) the ALJ improperly considered plaintiff's obesity. (Joint Stipulation ("Joint Stip.") at 2, 16.)

**I.   The ALJ Did Not Consider Properly Whether Plaintiff Met Or Equaled Listing 1.02A.**

Plaintiff contends that the ALJ improperly considered whether plaintiff's combined impairments meet or equal the impairments set forth in Listing 1.02A and did not provide a proper explanation for his determination. (Joint Stip. at 7-9.) As discussed below, the ALJ erred in his assessment of whether plaintiff's disabilities meet or equal Listing 1.02A, because he failed to develop the record.[4]

The Listings of Impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") were "designed to operate as a presumption of disability that makes further inquiry unnecessary."

---

[4] In addressing whether plaintiff meets or equals Listing 1.02A, both parties focus on whether plaintiff can ambulate effectively, pursuant to Section 1.00B2b of the Listings. However, the requirements of Listing 1.02A must first be met in addition to showing that plaintiff cannot ambulate effectively under Section 1.00B2b. Neither plaintiff nor defendant addresses whether plaintiff meets these foundational requirements, and the ALJ does not address these requirements in his decision.

6

Sullivan v. Zebley, 493 U.S. 521, 532 (1990). Indeed, physical and mental conditions contained in the Listings are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." Lester v. Chater, 81 F.3d 821, 828 (9th Cir. 1995). Plaintiff bears the burden of proving that her impairment or combination of impairments meets or equals the criteria of a Listing. Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999); *see* Zebley, 493 U.S. at 530-31 (burden is on the claimant to show that his or her impairment meets all of the specified medical criteria for a Listing or to present medical findings equal in severity to all the criteria for the one most similar listed impairment).

An ALJ must evaluate the relevant evidence to determine whether a claimant's impairment or impairments meet or equal one of the specified impairments set forth in the Listings. Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001); 20 C.F.R. § 416.920(a)(4)(iii). A "boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not [meet or equal a Listing]." Lewis, 236 F.3d at 512; *see also, e.g.*, Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990)(noting that the ALJ's unexplicated finding at step three was reversible error). An ALJ's lack of formal analysis and findings at step three, however, will not constitute reversible error when: the ALJ "discussed and evaluated evidence supporting his conclusion" in a different section of his decision; and with respect to equivalency, plaintiff "offered no theory, plausible or otherwise, as to how his [impairments] combined to equal a listed impairment." Lewis, 236 F.3d at 513-14.

Here, plaintiff argues that the medical evidence establishes that she met or equaled the impairments set forth in Listing 1.02A, which governs the major dysfunction of a joint due to any cause. Listing 1.02A is met when a claimant shows:

> [G]ross anatomical deformity (*e.g.*, subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).

20 C.F.R. Part 404, Subpart P, Appendix 1, 1.02. In addition, a finding of the "involvement of one major peripheral weight-bearing joint (*i.e.* hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b," must be found to meet Listing 1.02A. (*Id.*)

Section 1.00B2b of the Listings states that an "inability to ambulate effectively" means an "extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." Ineffective ambulation is "defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of *both* upper extremities." Section 1.00B2b(1)(emphasis added). This provision cites as "examples," *inter alia*, an "inability to walk *without the use of a walker*, two crutches or

8

two canes" or an "inability to use standard public transportation" or an "inability to carry out routine ambulatory activities, such as shopping" or an "inability to climb a few steps at a reasonable pace with the use of a single hand rail."  Section 1.00B2b(2)(emphasis added).

In assessing disability, it is the responsibility of the ALJ to resolve conflicts in medical testimony and analyze the evidence. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 416.927(d). The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to observe the claimant.  Magallanes, 881 F.2d at 751.  If the treating physician's "opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  *Id.*

An ALJ "has a special duty to fully and fairly develop the record and to assure that claimant's interest are considered."  Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983).  Pursuant to 20 C.F.R. § 416.912(e), the Administration "will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, [or] the report does not contain all the necessary information . . . ."  *See*

Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)(noting that "[i]f the ALJ thought he needed to know the basis of [the doctor's] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry").

Focusing on the requirements of Section 1.00B2b of the Listings, plaintiff argues that her medical records show that she "indeed suffers from the inability to ambulate effectively due to left knee problems and right knee problems."[5] (Joint Stip. at 6.) Plaintiff relies on evidence of record that she was prescribed a walker and wheelchair by Dr. Craig R. Mueller, M.D., her treating physician. (A.R. 286, 289.) Plaintiff further argues that, because Dr. Landau and the ALJ concluded that she should *avoid* uneven terrain (A.R. 55, 57), and the "Listing[s] . . . states that an example of ineffective ambulation includes the inability to walk on rough or uneven surfaces" (Joint Stip. at 9), the evidence clearly supports plaintiff's claim of ineffective ambulation, and thus, she meets Listing 1.02A (Joint Stip. at 8-9, 11-12). Finally, plaintiff argues that the ALJ "failed to evaluate the relevant evidence before concluding that [plaintiff's] impairments do not meet or equal a listed impairment." (Joint Stip. at 9.)

Here, the ALJ erred by rejecting Dr. Mueller's walker and wheelchair prescriptions without giving any specific and legitimate

---

[5] Although the ALJ found that only plaintiff's right knee disorder was severe (A.R. 55), medical evidence shows "normal alignment" at the left knee joint, with some "minor degenerative changes at the lateral femoral condyle" (A.R. 246).

10

reasons for doing so.[6] The record indicates that plaintiff was prescribed a walker and a wheelchair. (A.R. 286, 289.) However, the ALJ pointed to a discrepancy between plaintiff's statement that Dr. Mueller prescribed a wheelchair for her, and the fact that the signature on the wheelchair prescription did not appear to be Dr. Mueller's signature as seen on examination forms. (A.R. 59-60, 257, 286.) The ALJ also highlighted an ambiguity regarding the dates on the prescription form. (A.R. 59-60.) These "unanswered discrepancies in the record" (*id.*) should have triggered the ALJ's duty to develop the record further.[7] The ALJ should have contacted Dr. Mueller and inquired into these "unanswered discrepancies." The ALJ's failure to do so constitutes error.

Moreover, the ALJ failed to provide specific and legitimate reasons for disregarding the implicit opinion of Dr. Mueller that plaintiff required a walker or wheelchair to ambulate effectively. The ALJ should have contacted Dr. Mueller and inquired why plaintiff was prescribed a walker and a wheelchair, if the ALJ questioned her need for such assistive devices. Instead the ALJ disregarded this evidence based only on the "unanswered discrepancies" he found, without fully developing the record by giving plaintiff's treating physician an opportunity to address the discrepancies noted by the ALJ. Even if the medical expert and State Agency physicians determined that plaintiff could ambulate

---

[6] Dr. Mueller's prescription for a walker and a wheelchair would appear to constitute an implicit opinion that plaintiff cannot ambulate or move effectively without a walker or a wheelchair.

[7] The ALJ raises his concern with these "unanswered discrepancies in the record" in his discussion of plaintiff's credibility. (A.R. 59-60.)

11

effectively (A.R. 165, 168, 223, 254), the ALJ must still provide specific and legitimate reasons for disregarding Dr. Mueller's opinion.

Therefore, the ALJ's conclusion that plaintiff did not meet Listing 1.02A requirements, based on the medical expert and State Agency physicians' opinions, is improper. Clearly, *if* plaintiff meets the foundational requirements of Listing 1.02A *and* not only must be restricted from walking on uneven surfaces but also truly needs a walker or wheelchair, then she will meet the requirements of Listing 1.02A. The ALJ must develop the record regarding the walker/wheelchair prescription, and if the ALJ rejects Dr. Mueller's apparent opinion that plaintiff needs a walker and/or a wheelchair, the ALJ must provide specific and legitimate reasons for rejecting the treating physician's opinion.

**II. The ALJ Must Review And Reconsider Plaintiff's Obesity.**

Obesity is no longer, nor was it at the time of the ALJ's decision, a listed impairment. See <u>Revised Medical Criteria for Determination of a Disability, Endocrine System and Related Criteria</u>, 64 F.R. 46122 (effective October 25, 1999)(former Listing 9.09, "Obesity," was removed from Appendix 1, Subpart P of Part 404, the Listing of Impairments). Although obesity is not a listed impairment, an ALJ must consider the effect of a claimant's obesity upon her other impairments, both severe and non-severe, and ability to work. <u>Celaya v. Halter</u>, 332 F.3d 1177, 1182 (9th Cir. 2003); *see also* SSR 02-01p (requiring an ALJ to consider the effects of obesity at several points in the five-step sequential evaluation). An ALJ must "evaluate each case based on the information

in the case record," as obesity may or may not increase the severity of, or functional limitations associated with, of other impairments. SSR 02-01p.

Pursuant to SSR 02-01p, an ALJ must consider how obesity may interact with other impairments and affect whether a claimant meets a Listing: "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a [L]isting. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." SSR 02-01p, 2000 WL 628049 (Sep. 12, 2002). As previously noted, plaintiff suffers from both musculoskeletal impairments -- a severe right knee disorder and non-severe left knee disorder -- and the non-severe medically determinable impairment of asthma/COPD.

SSR 02-01p details how "obesity affects the cardiovascular and respiratory systems," making

> [I]t harder for the chest and lungs to expand. This means that the respiratory system must work harder to provide needed oxygen. This in turn makes the heart work harder to pump blood to carry oxygen to the body. Because the body is working harder at rest, its ability to perform additional work is less than would otherwise be expected.

*Id.* Overall, "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may

have more pain and limitation than might be expected from arthritis alone." *Id.*

The ALJ properly determined that plaintiff, who is five feet one and a half inches tall and weighs approximately 223 pounds, is morbidly obese and that her obesity is a severe impairment. (A.R. 54-55.) Considering plaintiff's morbid obesity in his RFC assessment, the ALJ found that, while plaintiff's obesity "imposes greater limitations on the claimant's ability to ambulate and sustain physical activities, it does not by itself or in combination with her other impairments meet the requirements of a listing." (A.R. 57.) Plaintiff argues that the ALJ failed to properly consider the impact of plaintiff's obesity at the "various stages of the disability determination process." (Joint Stip. at 16.) Plaintiff specifically contends that the ALJ failed to consider the impact of her obesity in making the step two and three determinations, as well as in determining her RFC. (*Id.*)

Plaintiff argues that there is no indication that the ALJ properly considered the impact of her obesity on her non-severe impairments. This contention, as well as plaintiff's contention that the ALJ erred at step three and in his RFC determination, must be addressed after the ALJ further develops the record, as plaintiff's obesity may exacerbate her non-severe asthma/COPD as well as her severe right knee impairment and her non-severe left knee impairment.

After furthering developing the record, if the ALJ determines that plaintiff meets Listing 1.02A, her obesity will not need to be addressed, because plaintiff will be presumptively disabled and

14

automatically entitled to disability benefits. However, if the ALJ determines that plaintiff does not meet Listing 1.02A, he must reconsider how plaintiff's obesity may interact with her current severe *and* non-severe impairments. In view of further development of the record, the ALJ may find that plaintiff's obesity causes the combination of her severe and non-severe impairments to be disabling. *See* <u>Lewis</u>, 236 F.3d at 514 ("The claimant's symptoms 'must be considered in combination and must not be fragmentized in evaluating their effects.'" (*quoting* <u>Lester</u>, 81 F.3d at 829)).

**III. <u>Remand Is Required</u>.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where the record has not been fully developed and/or there are outstanding issues that must be resolved before a proper determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

In this case, remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.,* <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989) (remand appropriate to remedy defects in the record). On remand, the ALJ needs to develop the record regarding the walker/wheelchair

prescription provided to plaintiff and then reconsider whether plaintiff meets or equals Listing 1.02A in the light of the developed record and her obesity. Further, should the ALJ reject the opinion of plaintiff's treating physician that she requires a wheelchair and/or walker to ambulate, the ALJ must set forth specific and legitimate reasons for so doing that are supported by the requisite substantial evidence. If after further developing the record, the ALJ determines that plaintiff does not meet Listing 1.02A, the ALJ must reconsider how plaintiff's obesity interacts with her current severe and non-severe impairments, as discussed *supra*.

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: July 6, 2011

_Margaret A. Nagle_
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE